IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHELSEA KROGER ACOSTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:24-CV-164-BR |
| | § | |
| AMARILLO INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

On January 19, 2023, E.C.,[1] three months before her eleventh birthday, died as the result

of anaphylaxis stemming from a severe allergic reaction she experienced while at school. (ECF 32

at 1-2). Plaintiff Chelsea Kroger Acosta, as the independent administrator of E.C.'s estate, filed

this lawsuit against the Defendant, Amarillo Independent School District ("AISD"), on July 31,

2024. (ECF 1). Plaintiff's First Amended Complaint[2] asserts claims against AISD for violation of

---

[1] Generally, federal court filings may not include the full name of any minor child, and must identify minors by their initials only. Fed. R. Civ. P. 5.2(a)(3). A person may waive protection of their own personal information by including it in a public, unredacted court filing. Fed. R. Civ. P. 5.2(h). The Court notes a split of opinion regarding whether a minor who is deceased may be referred to using their full name, or must instead be referred to using only initials. *Compare Baker v. Brewer*, No. 2:15-cv-11629, 2021 WL 1791553, n. 1 (E.D. Mich. May 5, 2021) ("Because the victim was a minor at the time of the offense [eleven years prior to proceedings], the Court will refer to him by his initials only to preserve his privacy."), *Griffin v. Poynter*, No. 1:20-cv-1427, 2022 WL 16836605 (C.D. Ill. Nov. 9, 2022) (referring to a deceased minor by her initials), *Ramirez v. Kingman Hosp. Inc.*, No. 3:17-cv-08026, 2018 U.S. Dist. LEXIS 145988 (D. Ariz. Aug. 28, 2018) (ordering refiling in redacted form the autopsy report of a minor), *and Ramos v. Cremar*, No. 5:15-cv-55, 2017 WL 4512563 (S.D. Tex. May 12, 2017) (referring to a deceased minor by his initials), *with Estate of Carmichael v. Galbraith*, No. 3:11-cv-622, 2012 WL 13568, n. 1 (N.D. Tex. Jan. 4, 2012) (referring to a deceased minor by name "because his identity has been revealed in public pleadings."), *Mines v. Selma City Bd. Of Educ.*, No. 2:24-cv-108, 2025 WL 863638, n. 1 (S.D. Ala. Mar. 19, 2025) ("Here, the concealment of the minor's identity is not required because the minor is deceased, and the Complaint fully identifies him."), *and Estate of Brown v. Ogletree*, No. 4:11-cv-1491, 2012 WL 591190, n. 1 (S.D. Tex. Feb. 21, 2012) (referring to a deceased minor by name "because his identity has been revealed in public pleadings."). Without deciding whether such redaction is mandatory under the Federal Rules or is waived by Plaintiff's filings, and out of respect for the privacy of the deceased minor in this case, the Court refers to her by her initials only. If Plaintiff decides later in this litigation that the minor's name should be removed from public filings by the parties, Plaintiff's counsel may contact the chambers of the undersigned for directions and assistance.

[2] The Court granted an unopposed motion for leave to amend on December 30, 2024. (ECF 31).

Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation

Act. (ECF 32 at 5-7). Now before the Court is AISD's motion to dismiss Plaintiff's First Amended

Complaint for failure to state a claim. (ECF 33). Having considered the Motion, the arguments of

the parties,[3] and applicable law, the Court DENIES the Motion to Dismiss.

## I.    PROCEDURAL BACKGROUND

Prior to initiating this lawsuit in Federal Court, Plaintiff sued AISD in Texas state court,

including for tort claims. (ECF 34 at 1). AISD removed that lawsuit to this Court, and Plaintiff

voluntarily dismissed her claims. *See Acosta v. Amarillo Indep. Sch. Dist.*, No. 2:24-cv-139-Z-BR.

Plaintiff then initiated the instant lawsuit without her previous tort claims. (ECF 1).

The instant Motion to Dismiss turns solely on whether Plaintiff's First Amended Complaint

adequately alleges intentional discrimination. A related sub-issue is whether the Court can or

should consider the contents of a medical expert report that Plaintiff filed with her original state-

court petition. Texas state law requires plaintiffs pursuing health care liability claims to produce

preliminary expert reports in support of their claims. Tex. Civ. Prac. & Rem. § 74.351; *see Walker*

*v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) ("The purpose of these

requirements is to weed out frivolous malpractice claims in the early stages of litigation." (cleaned

up)). Plaintiff filed two such reports in her original state-court lawsuit, and AISD moves the Court

to consider the contents of one of those reports. (ECF 34 at 6-7). Plaintiff disputes that the report

---

[3] Plaintiff did not file a response or brief to AISD's Motion to Dismiss Plaintiff's First Amended Complaint. However, before Plaintiff filed her First Amended Complaint, (ECF 32), AISD filed a Motion to Dismiss Plaintiff's Original Complaint, (ECF 8), to which Plaintiff filed a response, (ECF 16), with accompanying brief, (ECF 17). AISD filed a brief in reply, (ECF 18), and, with leave of the Court, Plaintiff filed a sur-reply, (ECF 28). The arguments in AISD's brief in support of its Motion to Dismiss Plaintiff's Original Complaint, (ECF 9), are substantially similar to those in its brief supporting the Motion to Dismiss Plaintiff's First Amended Complaint, (ECF 34), so the Court has taken the parties' briefing of the original Motion into account when considering the instant Motion.

is an appropriate matter for consideration regarding the instant Motion, and further denies that it undercuts the claims in her First Amended Complaint. (ECF 28 at 1-6).

## II.    DISMISSAL STANDARD

The Federal Rules of Civil Procedure allow for dismissal of a complaint if it fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a claim must satisfy the standards of Rule 8, as those standards have been articulated in past jurisprudence. *See* Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (together setting the standard for a plaintiff's factual allegations to survive a Rule 12(b)(6) motion).

Pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The pleading does not need to prove the plaintiff's case, and a court evaluating a Rule 12(b)(6) motion must view all well-pleaded facts in the light most favorable to the plaintiff. *Hodge v. Engleman*, 90 F.4th 840, 843-4 (5th Cir. 2024). However, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hodge*, 90 F.4th at 843 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

This determination involves a two-step process. *See Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *see also Iqbal*, 556 U.S. at 679. The first step is to set aside any "conclusory allegations, unwarranted factual inferences, or legal conclusions" made by the plaintiff, which a court cannot assume to be true when deciding a Rule 12(b)(6) motion. *Hodge*, 90 F. 4th at 843, *and Waller*, 922 F.3d at 599. The second step is to determine whether sufficient allegations remain in the complaint for the court to reasonably infer that the plaintiff's case is plausible, rather than merely possible or speculative. *Waller*, 922 F.3d at 599 (citing *Iqbal*, 556 U.S. at 678-9).

When going through this process, courts generally will not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). If such material is not excluded from consideration, a court must convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56, which requires prior notice to the parties and sufficient opportunity for the plaintiff to respond to the allegations or evidence submitted by the movant. *Id.*; *see also Hodge*, 90 F.4th at 843. Documents that a defendant attaches to a motion to dismiss are matters outside the pleadings unless they are referred to in the complaint and are central to the plaintiff's claims. *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

However, to the extent relevant, a court may also consider matters subject to judicial notice. *Id.* A court may take judicial notice of facts that are "not subject to reasonable dispute," either because such fact is "generally known" within the court's jurisdiction or else because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may judicially notice relevant facts that are beyond reasonable dispute and are established in documents of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Judicial notice of appropriate facts can be taken *sua sponte*, but is mandatory on motion of a party. Fed. R. Evid. 201(c).

In summary, when deciding a motion to dismiss for failure to state a claim, a court must set aside everything but the well-pleaded allegations in the plaintiff's pleadings, then must determine whether those allegations, in light of any judicially-noticed facts, establish any plausible right to relief for the plaintiff. If no plausible right to relief is established, the claim must be dismissed.

### III.    THE ADA AND THE REHABILITATION ACT

The ADA and the Rehabilitation Act establish rights to relief for disabled individuals who have been subjected to discrimination. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159-60

(2017) *and J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023). Title II of the ADA, codified at 42

U.S.C. §§ 12131 *et seq.*, provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Similarly, Section 504 of the 1973 Rehabilitation Act, codified at 29 U.S.C. §

794, provides that:

> no otherwise qualified individual with a disability…shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a) (emphasis added). Section 504 applies to all programs receiving federal funds,

but requires that a claimant's disability be the only reason for the discriminatory actions—a stricter

causation standard than that of Title II, which applies only to public entities. *See Paley*, 81 F.4th

at 449. Both Acts provide for the vicarious liability of covered entities for the acts of the entity's

employees, and the liability standards under both Acts are the same. *Id*.

      To recover damages under either Act, a plaintiff must show that a defendant's conduct was

intentional. *Id*. The Fifth Circuit has declined to articulate any rigid test for intentionality in these

cases, but there is a substantial body of case law analyzing the requirement, especially in the

failure-to-accommodate context. *Id.* at 449-50. The requirement is for "something more than

deliberate indifference." *Id.* at 450. As a *de minimis* threshold, the defendant must have had actual

knowledge that a reasonable accommodation was necessary. *Id*. The requirement is obviously

satisfied by (but not necessarily limited to) showings of a discriminatory motive or malicious

animus. *Id*.

## IV.   FACTUAL BACKGROUND[4]

E.C. had a severe allergy to dairy. (ECF 32 at 1). An action plan was filed with AISD

detailing the steps that should be taken if she had an allergic reaction while at school. (*Id.* at 12).

This action plan required that, in the event of a reaction, school personnel were to administer

epinephrine, contact emergency services, and notify E.C.'s parents. (*Id.* at 2). AISD did not allow

E.C. to carry the prescribed epinephrine herself. (*Id.* at 4).

On January 17, 2023, E.C. was eating lunch in her middle school cafeteria. (*Id.* at 3). She

began experiencing an allergic reaction, so she went to the office of the school nurse, who was not

present. (*Id.*). A school official called E.C.'s mother to ask if they could administer Benadryl and

were given permission to do so. (*Id.*). E.C. took the Benadryl, but then became sick and vomited.

(*Id.*). E.C.'s grandmother traveled to the school, and when she arrived, "E.C. was struggling with

a breathing treatment." (*Id.*). E.C.'s grandmother called the local fire department, and was told

"that they had just received the emergency call from the school." (*Id.*). E.C. collapsed, and her

grandmother began administering CPR. (*Id.*). The fire crew then arrived and took over care of E.C.

until the ambulance arrived and transported her to the hospital. (*Id.* at 3-4). E.C. died two days

later as a result of the anaphylactic episode. (*Id.* at 2).

## V.   ANALYSIS

AISD argues that Plaintiff cannot show the intentionality necessary to recover

compensatory damages under the ADA and the Rehabilitation Act. (ECF 34 at 2). Instead, AISD

argues that, even when accepting all of Plaintiff's factual allegations as true and construing them

in the light most favorable to her case, Plaintiff's pleadings make a plausible case for negligence

---

[4] The factual allegations in this section are taken from Plaintiff's filings and are assumed to be true for purposes of this Order. *See Hodge*, 90 F.4th at 843.

at most. (*Id.*). To support this argument, AISD has quoted an excerpt from one of the expert reports that Plaintiff filed in her original, state court suit for tort liability, and has asked that the Court take judicial notice of it. (ECF 27 at 5-7).

### A.    The Expert Report

As a preliminary matter, the Court declines to convert AISD's Motion to Dismiss to a motion for summary judgment, and so will only consider matters external to the pleadings to the extent such matters are appropriate for judicial notice. *See Hodge*, 90 F.4th at 843. AISD argues that judicial notice of the report, which was written by Ms. Monica Porras, MSN, RN, NCSN, is appropriate because, as a "previously filed pleading," it is a "public record." (ECF 34 at 5). AISD further argues that the report, in which Ms. Porras opines that the acts and omissions of AISD staff amounted to negligence, supports AISD's argument that Plaintiff cannot show intentionality. (*Id.* at 7; ECF 18 at 1).

Plaintiff responds that the report is not an appropriate matter for judicial notice. (ECF 17 at 2). Plaintiff argues that the Court could take judicial notice of the fact the expert report exists, or of the fact that it was filed in state court, but cannot judicially notice as facts in this litigation the allegations from the expert report filed in prior state-court litigation. (ECF 28 at 3-4). Plaintiff points out that AISD would not agree its staff was negligent on the occasion in question, meaning the allegations to that effect in the report are subject to reasonable dispute and cannot be judicially noticed. (*Id.* at 4).

The Court generally agrees with Plaintiff. Judicial notice of Plaintiff's filings in other courts is appropriate, but judicial notice of the facts asserted in those filings is not. *See Lewis v. Danos*, 83 F.4th 948, 949-55 (5th Cir. 2023). Phrased differently, if the Court were to make a factual finding that AISD was negligent in connection with E.C.'s death based solely on the expert report, the Court would clearly be in error; if this case were to proceed to trial, AISD would be

7

expected to rightfully object to such a finding. Indeed, AISD in its own brief "adamantly denies that the District or any of its employees acted negligently in connection with the events" underlying this suit. (ECF 34 at 2, n. 2). Thus, the facts alleged in the expert report are in dispute and are not an appropriate matter for judicial notice.

Even if the Court considered Ms. Porras' statements in the report, they would not change the result in this case. To consider the report as evidence relevant to AISD's Motion to Dismiss without taking judicial notice, the Court would have to convert that Motion to one for summary judgment. Fed. R. Civ. P. 12(d). And a single expert opinion that AISD staff failed to exercise ordinary care on the occasion in question would not be decisive summary judgment proof that AISD was not intentionally discriminatory under either Act. Or, as Plaintiff puts it, finding AISD staff were negligent in providing medical care to E.C. would not preclude finding that AISD intentionally discriminated against E.C. as well. (ECF 17 at 5).

In summary, the Court declines to consider the expert report by Ms. Porras, either by taking judicial notice of its contents or by converting AISD's Motion to Dismiss to one for summary judgment. Further, even if the Court were to consider the report, doing so would not lead the Court to grant AISD's Motion to Dismiss.

### B.    The Sufficiency of Plaintiff's Allegations

Plaintiff's claims are premised on the theories that AISD refused to train staff in a manner that would have reasonably accommodated E.C.'s disability, refused to allow her to carry her own epinephrine on her person, refused to have a trained nurse on campus at all times, and refused to administer epinephrine to E.C. on the occasion that resulted in her death. (ECF 32 at 4). The factual allegations in Plaintiff's First Amended Complaint, when taken as true and construed in the light most favorable to Plaintiff, are sufficient for the Court to reasonably infer that these theories are plausible, rather than merely possible or speculative. *See Waller*, 922 F.3d at 599.

As noted above, actual knowledge is a prerequisite to intentional discrimination in these cases. *Paley*, 81 F.4th at 450. This means a school district needs actual knowledge of student disabilities, of the limitations resulting from those disabilities, and of the way those limitations will exclude students unless reasonable accommodations are made. *Id*. If a school district, out of deliberate indifference to these known facts, does not provide those accommodations, the Fifth Circuit[5] limits plaintiffs to equitable relief forcing such accommodations. *See, e.g.*, *Miraglia v. Bd. of Supervisors of the La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (noting that equitable claims do not require a showing of intent). If, on the other extreme, the school district enacts policies specifically intended to prevent students from accessing accommodations and specifically with the goal of excluding those students, there is no doubt that plaintiffs would be permitted to pursue compensatory damages. *Paley*, 81 F.4th at 450.

The distance between these two lines, if any, has not been measured by the Fifth Circuit. *See Miraglia*, 901 F.3d at 574-75 (acknowledging without evaluating a party's argument that "intent" requires only "purposeful action" and that there is "some distance between" intent and "discriminatory animus"). Nevertheless, it seems likely that conduct might be both intentional and discriminatory without being driven by discriminatory motive or malicious animus. *See Paley*, 81 F.4th at 450 ("Of course, this standard is met under circumstances revealing a discriminatory motive.") (*quoting Wilson v. City of Southlake*, 2022 WL 17604575, at *6 (5th Cir. Dec. 13, 2022) (per curiam), which continues, "*Otherwise*, Fifth Circuit cases discussing the issue have required something more than deliberate indifference." (emphasis added, internal quotes omitted)).

---

[5] Other circuits, by contrast, equate intentionality and deliberate indifference. *See, e.g.*, *S.H. ex rel. Durell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013).

Here, Plaintiff has alleged that AISD knew, in accordance with E.C.'s action plan, that a reasonable accommodation was necessary if she were not to be excluded by her disability. (ECF 32 at 4). Plaintiff has further alleged that, on the occasion in question, AISD intentionally refused to make that accommodation by administering her emergency medication, resulting in E.C.'s death. (*Id.*). Finally, Plaintiff has alleged that AISD's other intentional acts, including decisions not to have a trained nurse on campus, not to train staff who were on campus, and not to allow E.C. to carry her own epinephrine, resulted in discriminatory exclusion. (*Id.*). Together, these allegations state a plausible case that AISD engaged in intentional, discriminatory behavior in violation of the ADA and the Rehabilitation Act.

The Court does not hesitate in the slightest to presume that every single individual involved in the events underlying this lawsuit wanted E.C. to live. Plaintiff has not alleged, and the Court does not imagine, that AISD or any of its employees was motivated by a desire for bad events to transpire because of E.C.'s disability. And it may be that, after some discovery, the weight of the evidence is such that no reasonable jury could find that E.C.'s unfortunate death was the result of intentionally discriminatory acts or omissions on the part of AISD. But that is not the standard at this stage in the litigation. Plaintiff has stated a claim for relief that is plausible on its face, and her lawsuit cannot be dismissed pursuant to Rule 12(b)(6).

## VI.    CONCLUSION

For the foregoing reasons, AISD's Motion to Dismiss Plaintiff's First Amended Complaint (ECF 23) is DENIED.

IT IS SO ORDERED.

ENTERED April 29, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE